E. NEWMAN ET AL *v.* WILLIAM C. POWELL.

**Deeds—Void—Infelicity of Grantor.**

     A deed was given a brother to the undivided one half interest in land descending to a sister, the latter of whom was proven at the time to have been irrational. The deed recited love and affection, and to carry out the wish of their father. In a subsequent suit by the grantors children to vocate same, by reason of their mother being of unsound mind, it is held, that the deed was void, as not being the deliberate act of a discrete and intelligent person.

APPEAL FROM CASEY CIRCUIT COURT.

June 3, 1870.

OPINION OF THE COURT BY JUDGE HARDIN:

In February, 1864, Elizabeth Jackson, a widow, and the mother of three adult children, with one of whom she resided in Jessamine county, being temporarily in Casey county, where she owned, by descent from her mother, an undivided interest in a tract of land then in the possession of her brother, W. C. Powell, worth about $1,400, united in a conveyance thereof to Powell, for the expressed consideration of natural love for her brother, and the further reason that it had been the wish of the father, who had recently died, that his said son, W. C. Powell, should own said tract of land, which he, though owning but a life estate therein, had attempted to convey to said W. C. Powell.

In March, 1867, Edward Newman, the son of Mrs. Jackson,

filed a petition in the Jessamine circuit court, suggesting that she was a lunatic, and thereupon an inquest was held, by which it was found that she was and had been of unsound mind, and a lunatic for four or five years. Said Edward Newman being appointed the committee of his mother, this suit was instituted by him to set aside said deed, mainly on the ground of the mental incapacity of the grantor when it was made, and she having died during the pendency of the action, it was revived and presented by Newman and others as her heir-at-law.

The court, on hearing the cause, dismissed the petition, and the plaintiffs have appealed to this court.

The depositions of a number of witnesses were taken by the plaintiffs in Jessamine county, and by the defendant in Casey, and their testimony is strangely conflicting as to the state of Mrs. Jackson's mind in February, 1864. In Jessamine, many facts and circumstances pertaining to her conduct were proved in corroboration of the inquest of lunacy, and the opinions of two physicians which seem conclusive of the factt hat she had been of unsound mind since about the year 1862; and as it appears that she frequently visited her friends in Casey, it is difficult to conclude that the numerous relations of herself and the defendant, who have testified that her insanity did not occur until after the date of the conveyance, were wholly misinformed of facts leading to a different conclusion, which seem to have been generally known among the neighbors and acquaintances of Mrs. Jackson in the county of her residence.

On her return from Casey county, after the execution of the deed, she was irrational, as she had been before, and the inference is strong, that if the witnesses for the appellee were not grossly deceived or biased, she enjoyed but a lucid interval during her sojourn with them in Casey.

Her small interest in the land in Casey seems to have been her principal estate, which, if the deed is sustained, she, for no valuable consideration, gave to her brother, to the exclusion of her own children, on whom she seems to have been dependent, and to whom she must, in her affliction, have been an object of much solicitude and care, if not of expense. Testing the conveyance by the usual rules for determining the validity of like instruments, we are of the opinion that it ought not to stand.

Situated as Mrs. Jackson was, this conveyance seems to us to

have been rash, improvident and unjust to her children, and if it was not the result of some fraudulent device, on the part of the appellee, which may be inferred, it ought not, we think, under all the circumstances of this case, to be upheld as the deliberate act of a discreet and intelligent person.

Wherefore, the judgment is reversed, and the cause remanded for judgment in conformity to this opinion.

*Durham, Jacobs, for appellants.*